## DURHAM LIFE INS. CO. v. FEDERAL RADIO COMMISSION.

### No. 5444.

Court of Appeals of District of Columbia.

Argued Nov. 2, 1931.

Decided Dec. 21, 1931.

Petition for Rehearing Denied Jan. 8, 1932.

Louis G. Caldwell and Arthur W. Scharfeld, both of Washington, D. C., for appellant.

Thad H. Brown, Gen. Counsel, and D. M. Patrick, Asst. Gen. Counsel, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

Appellant owns and operates a radio broadcasting station with call letters WPTF, located at Raleigh, N. C. The station is licensed to operate in daytime upon frequency 680 kilocycles with power of 1 kilowatt.

In July, 1930, appellant filed an application with the Federal Radio Commission requesting a permit to increase its power from 1 kilowatt to 5 kilowatts, and to install for that purpose a new transmitting apparatus at a location about 7 miles distant from the present one. The application was denied by the Commission, whereupon this appeal was taken.

The Commission now moves that the appeal be dismissed upon the ground that the application is for a "construction permit," and that no appeal is allowed by statute from an order denying such an application, citing section 16 of the Radio Act of 1927, 44 Stat. 1162, as amended by Act of July 1, 1930, Public, No. 494, Seventy-first Congress (47 USCA § 96).

In our opinion the application when properly considered is not for a construction permit, but for a modification of an existing station license. It does not seek a change of name, ownership, frequency, time of operation, or substantial change of location. It seeks only an increase of power, with permission to install transmitting equipment necessary for that purpose. Orders of the Commission denying such applications are made appealable by both statutes above cited. The motion to dismiss the appeal is therefore denied.

The province of this court in passing upon such appeals is defined by paragraph (d) of the Act of July 1, 1930, supra, as follows: "(d) At the earliest convenient time the court shall hear and determine the appeal upon the record before it, and shall have power, upon such record, to enter a judgment affirming or reversing the decision of the commission, and, in event the court shall render a decision and enter an order reversing the decision of the commission, it shall remand the case to the commission to carry out the judgment of the court: Provided, however, That the review by the court shall be limited to questions of law and that findings of fact by the commission, if supported by substantial evidence, shall be conclusive unless it shall clearly appear that the findings of the commission are arbitrary or capricious."

A consideration of the appeal requires a brief reference to certain prior legislation and regulations affecting radio broadcasting.

By the Radio Act of 1927, 44 Stat. 1162 (sections 1–4 (47 USCA §§ 81–84), Congress divided the United States into five zones, and established the Federal Radio Commission composed of a member from each zone, with power to license and regulate radio broadcasting stations in this country as permitted by the act, and to make such a distribution of licenses, wave lengths, time of operation, and power, among the different states and communities as to give fair, efficient, and equitable radio service to each of the same, and as public convenience, interest, and necessity may require.

At the time when this act was passed radio broadcasting in this country was in a state of chaos, without regulation of the number, location, frequency, or power of such stations, and the broadcasting field was crowded with an excessive number of stations.

On March 28, 1928, Congress amended the former act by the Davis Amendment, 45 Stat. 373, § 5 (47 USCA § 89), which provides in part that the people of all the zones established by the previous act are entitled to equality of radio broadcasting service, both of transmission and of reception, and, in order to provide such equality, the licensing authority shall as nearly as possible make and maintain an equal allocation of the broadcasting licenses, of bands of frequency or wave lengths, of periods of time for operation, and of station power, to each of said zones when and in so far as there are applications therefor, and shall make a fair and equitable allocation of licenses, wave lengths, time for operation, and station power to each of the states, the District of Columbia, the territories, and possessions of the United States within each zone, according to population; and that the licensing authority shall carry into effect the equality of broadcasting service hereinbefore directed, whenever necessary or proper, by granting or refusing licenses or renewals of licenses, by changing periods of time for operation, and by increasing or decreasing station power, when applications are made for licenses or renewals of licenses.

On June 17, 1930, the Commission decided that, in order to carry out these provisions, it was necessary for it to adopt a method of determining the comparative values of stations of various classes based on type of

channel, powers, hours of operation, and all other considerations required by law. Accordingly with the assistance of its engineers and other experts the Commission adopted its General Order No. 92 wherein it prescribed a schedule setting out a unit value for each facility used in broadcasting by any station.

On January 8, 1931, the Commission adopted its General Order No. 102, wherein it recited among other things that certain of the zones were overquota while others were underquota, and that a similar condition existed between the states composing certain of the zones, and therefore resolved that, where a zone has already in use its pro rata share of facilities, the Commission will not allocate any further radio facilities to that zone which would increase its quota, and likewise, where a state is already overquota, the Commission will not allocate any further radio facilities to that state, which would increase its quota. The record discloses that the state of North Carolina is situate within the third zone as defined by the statute, and that this zone is overquota to the extent of 9.59 units, which is about 11 per cent. in excess of its normal allocation. It discloses also that the state of North Carolina is underquota by 1.01 units as compared with the other states within the third zone, but, if allotted the increase now requested it would be 0.47 unit overquota as compared with them.

Appellant's broadcasting station is located within the city of Raleigh, which is the capital of North Carolina, and is one of the political, educational, and cultural centers of the state. The history of the station is in the highest degree commendable, and it may be assumed with confidence that its future operation will be above criticism. Its equipment is good, and with its present power it has a reliable service area within a radius of about 25 miles and a fair service area within a radius of about 75 miles. In the good service area there is a population of about 365,000, and in the fair service area about 1,200,000. If the power of the station be increased from 1 kilowatt to 5 kilowatts, it is probable that the good and reliable service area will be about doubled, with a corresponding increase in population. It is probable that no objectionable interference with other existing stations would result from the proposed increase of power. Such increase, however, is not necessary to enable the station to render the same public service as heretofore, for its application is designed solely for the purpose of increasing its service area. The present issue

therefore is not whether the station shall suffer the loss of any facility heretofore allotted to it, but whether it shall be granted an additional facility not heretofore possessed by it.

The Commission upon consideration denied appellant's application, speaking in part as follows:

"Section 9 of the act as amended, is the basis for the quota system and its provisions are mandatory upon the commission to 'make and maintain an equal allocation,' of broadcasting facilities. The section indirectly prohibits grants of facilities, the effect of which would be unequal allocation. In effect the commission declared in General Order No. 92 that in the present state of the radio art the country had reached its approximate saturation point, possessing the maximum available broadcasting facilities, and that the problem was the distribution of such facilities as required by the standard of public interest and section 9 of the act, as amended.

"It is conceivable that remote instances may occur where the denial of the use of a facility, for reasons based upon the quota figures, may apparently seem arbitrary. In many of such instances, however, the particular facility may be used in another locality where it would tend toward an equitable distribution as required by the act. And in the great majority of cases the ultimate result is to make possible a better radio service by equality in distribution of facilities. In any event the Congress has issued its mandate and these and similar orders of the commission are merely for the purpose of carrying that rule into effect."

The decision concludes as follows:

"1. The granting of this application would work a violation of section 9 of the Radio Act of 1927, as amended by the Act approved March 28, 1928 (Davis Amendment), in that there would result an increase in the radio broadcasting facilities of a zone which now enjoys more than its share of such facilities.

"2. Although the State of North Carolina now has less than its share of radio broadcasting facilities, if this application were granted a violation of section 9 of the Radio Act of 1927, as amended, would result in that the State would thereby be assigned more than its share of such facilities.

"3. Public interest, convenience and/or necessity would not be served by the granting of this application."

540

In our opinion this decision is not contrary to law, nor is it arbitrary or capricious.

 It is true that the increase of power requested by appellant would subserve the public convenience and interest of the people residing in the additional area which would be better served thereby. But the Commission must take into consideration the public convenience, interest, and necessity of the radio service of the entire country, of which appellant's station and its service area are but a part. Congress has found it necessary to formulate general rules to govern the exercise of this authority. Accordingly, in the Davis Amendment it has provided that as far as possible an absolute equality of broadcasting facilities is to be divided between the respective zones, and that each zone's facilities shall be divided among the states composing it according to population. The Commission is required to carry this equality into effect whenever necessary or proper, by increasing or decreasing station power when applications are made for licenses or renewals of licenses. This provision plainly includes the authority similarly to deny an increase of power when applied for by a station. General Orders 92 and 102 are valid regulations within the terms of the Davis Amendment, and the Commission's denial of appellant's application is justified thereby.

Appellant contends that the Davis Amendment, if given such an application, is unconstitutional. We do not think so. Congress has the power under the commerce clause of the Federal Constitution (article 1, § 8, cl. 3) to regulate all forms of interstate and foreign commerce, and radio broadcasting is a species of such commerce. Regulation of it must necessarily have regard to the number, location, construction, and operation of such stations, including the power employed by them in transmitting radio signals.

The decision of the Commission is not arbitrary or capricious. The number of radio stations already operating in this country is so great that a faithful compliance with the restrictive regulations relating to the establishment of new stations, or the increase of the power of existing ones, is necessary to avoid confusion. At times this may seem harsh in individual cases, but it is conducive to public interest, convenience, and necessity, when the broadcasting system of the country is considered as an entirety.

The decision appealed from is affirmed, with costs.